Jonathan S. Chernow (JSC-7339)
WHITE, FLEISCHNER & FINO, LLP
140 Broadway, 36th Floor
New York, NY 10005
(212) 487-9700
Attorneys for Defendants Brinks Global Services USA, Inc.
and Brinks, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

RETAIL TRAVEL SERVICES, INC.,

                      Plaintiff,

       -against-

BANK OF AMERICA, N.A., BRINKS
GLOBAL SERVICES USA, INC. and
BRINKS, INC.,

               Defendants.

————————————————————————X

Docket No.: 07 CV 4617 (CM)

ANSWER, CROSS-CLAIMS
and COUNTERCLAIMS____

Defendants BRINKS GLOBAL SERVICES, USA, INC. and BRINKS, INCORPORATED, sued herein incorrectly as BRINKS, INC. [hereinafter "the BRINKS Defendants"], by their attorneys, WHITE, FLEISCHNER & FINO, LLP, as and for their Answer, Cross-Claims and Counterclaims to Plaintiff's First Amended Complaint [hereinafter "Plaintiff's FAC"], hereby allege as follows, upon information and belief:

### AS AND FOR THE BRINKS DEFENDANTS' ANSWER TO "PARTIES"

1.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraphs "1." and "2." of Plaintiff's FAC.

2.     Deny each and every allegation contained in paragraph "3." of Plaintiff's FAC, except admit that Defendant BRINKS GLOBAL SERVICES USA, INC. is a Delaware

corporation having an office and principal place of business at 580 Fifth Avenue, Suite 400, New York, N.Y. 10036 and conducts business within this district.

3.    Deny each and every allegation contained in paragraph "4." of Plaintiff's FAC, except admit that Defendant BRINK'S, INCORPORATED, sued herein incorrectly as BRINKS, INC., is a Delaware corporation having an office and principal place of business at 1801 Bayberry Court, Richmond, VA 23226 and conducts business within this district.

4.    Deny each and every allegation contained in paragraph "5." of Plaintiff's FAC, except admit that Defendant BRINK'S GLOBAL SERVICES U.S.A., INC. is a subsidiary of Brink's Security International, Inc. and Brink's Security International, Inc. is a subsidiary of Defendant BRINK'S, INCORPORATED, sued herein incorrectly as BRINKS, INC. which for purposes of convenience except where it would be inappropriate, will be referred to herein as "the BRINKS Defendants."

5.    Deny knowledge or information sufficient to form a belief as to the allegations contained in incorrectly numbered and penultimate paragraph "4." following paragraph "5." of Plaintiff's FAC.

## AS AND FOR THE BRINKS DEFENDANTS' ANSWER TO "JURISDICTION AND VENUE"

6.    Admit the allegations contained in incorrectly numbered paragraph "5." of Plaintiff's FAC.

7.    Deny each and every allegation contained in paragraph "6." of Plaintiff's FAC, except admit that the BRINKS Defendants and Defendant BANK OF AMERICA, N.A. [hereinafter "BANK OF AMERICA"] conduct business in this district.

## AS AND FOR THE BRINKS DEFENDANTS' ANSWER TO "FACTS"

8.    Deny each and every allegation contained in paragraph "7." of Plaintiff's FAC.

9.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph "8". of Plaintiff's FAC.

10.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph "9." of Plaintiff's FAC.

11.    Admit each and every allegation contained in paragraph "10." of Plaintiff's FAC, except deny knowledge or information sufficient to form a belief as to when Plaintiff first opened an account with Defendant BANK OF AMERICA.

12.    Deny each and every allegation contained in paragraph "11." of Plaintiff's FAC, except admit that beginning in or about late 2005 to early 2006, Defendant BRINK'S, INCORPORATED began to pick-up bags said to contain a certain value from Plaintiff's facility at 52 Butler Street, Unit A, in Elizabeth, New Jersey for delivery to a BANK OF AMERICA facility at 600 Elizabeth Avenue in Elizabeth, New Jersey ("Elizabeth, New Jersey facility").

13.    Deny each and every allegation contained in paragraph "12." of Plaintiff's FAC, except admit that during a period of time beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 and at an average of approximately twice a week beginning in or about June 2006, personnel from Defendant BRINK'S, INCORPORATED picked-up bags said to contain a certain value from Plaintiff's facility at 52 Butler Street, Unit A, in Elizabeth, New Jersey ("Elizabeth, New Jersey facility") pursuant to signed BRINKS Airbills, the "Terms and Conditions of Contract" of which were handed to Plaintiff at the time of pick-up.

14.    Deny each and every allegation contained in paragraph "13." of Plaintiff's FAC, except admit that during the period beginning on or about late 2005 to early 2006 and continuing

3

through October 27, 2007, employees of Defendant BRINK'S, INCORPORATED picked-up sealed BRINKS bags said to said to contain a certain value from Plaintiff's Elizabeth, New Jersey facility and signed BRINKS Airbills upon receipt of said bags, the "Terms and Conditions of Contract" of which are incorporated by reference and are the best evidence thereof.

15.     Deny each and every allegation contained in paragraph "14." of Plaintiff's FAC, except admit that Defendant BRINK'S, INCORPORATED'S usual and customary practice, which upon information and belief Plaintiff was aware of and assented to, was to store the sealed bags it received from Plaintiff pursuant to the signed Airbills, deposit them in a locked and secured cage in a locked and secured warehouse for overnight storage at its facility in Newark, New Jersey at 481-495 N.J. Railroad Avenue and deliver them usually the next day or occasionally two days later to the BANK OF AMERICA'S Elizabeth, New Jersey facility.

16.     Admit the allegations contained in paragraph "15." of Plaintiff's FAC.

17.     Deny each and every allegation contained in paragraph "16." of Plaintiff's FAC, except admit that the BRINKS Airbill that was signed by a BRINK'S, INCORPORATED employee and the Transfer Delivery Sheet that was signed by a BANK OF AMERICA employee each indicated that BANK OF AMERICA received an un-compromised sealed bag said to contain the value indicated by Plaintiff and in the same condition that BRINK'S INCORPORATED received it.

18.     Deny each and every allegation contained in paragraph "17." of Plaintiff's FAC, except admit that the BRINKS Defendants were advised by Plaintiff's Director of Security "Corey Crotenberg" ("Crotenberg") that beginning on June 19, 2006, two of Plaintiff's employees named "Jamille" and "Caleen" claimed that there were "short deposits" in Plaintiff's

account with BANK OF AMERICA from bags that BRINK'S, INCORPORATED had delivered.

19.    Deny each and every allegation contained in paragraph "18." of Plaintiff's FAC, except admit that the BRINKS Defendants were advised by "Crotenberg" that one of Plaintiff's employees named Sam Attias claimed on October 24, 2006 that there was allegedly a recurring issue involving missing deposits and $100,000.00 unaccounted for since May 2006 which was allegedly discovered when Mr. Attias was reconciling the bank accounts and admit that the BRINKS Defendants were advised by "Detective Hererra" on or about October 30, 2006 that Plaintiff was allegedly missing $160,000.00 in deposits.

20.    Deny each and every allegation contained in paragraph "19." of Plaintiff's FAC, except admit that Plaintiff did conduct an investigation into the allegedly missing deposits, during which the BRINKS Defendants were not advised that they were blamed or held responsible for same, and subsequent to which Plaintiff's Complaint dated May 24, 2007 alleged, *inter alia*, that Plaintiff's investigation "determined that approximately $208,000.00 of plaintiff's deposits had been stolen or otherwise misappropriated by a Bank of America employee(s)…" **(See Exhibit "A" attached hereto, at para. 13)**.

21.    Deny each and every allegation contained in paragraph "20." of Plaintiff's FAC, except deny knowledge or information as to said allegations insofar as they pertain to Defendant BANK OF AMERICA.

22.    Deny each and every allegation contained in paragraph "21." of Plaintiff's FAC.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

23.    The FAC fails to state a claim against the BRINKS Defendants upon which relief can be granted.

5

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

24.    The liability, if any, of the BRINKS Defendants is barred or limited by the "Terms and Conditions of Contract" on any of the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time a BRINKS bag said to contain a certain value was picked-up at Plaintiff's Elizabeth, New Jersey facility.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

25.    The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period beginning in or about late 2005 to early 2006 and continuing through October 27, 2006, state as follows, in pertinent part:

> **II CUSTOMER REPRESENTATIONS AND WARRANTIES: INDEMNIFICATION OF BRINK'S.**
>
> ....
> 3.    You have properly and accurately described the Property in the Shipment and declared its full value for customs purposes and for carriage purposes. The Shipment is properly marked, addressed or otherwise identified and packaged to ensure safe transportation during ordinary handling in transit.
>
> 4.    You agree to be bound by the accuracy of all descriptions, valuations and other particulars furnished to Brink's for customs, consular and all other services.
>
> ....
>
> You agree to indemnify, hold harmless and defend Brink's from and against any and all damages, loss, expenses (including attorney's fees), liability or claims, made at any time, or presented in any manner by any persons or entity with respect to the breach of any term(s) of this

26.    Pursuant to the above term and condition of contract, Plaintiff is required to indemnify, hold harmless and defend the BRINKS Defendants from any and all cross-claims brought by co-Defendant BANK OF AMERICA in this action.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

27.     The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S,

INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain

certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period

beginning in or about late 2005 to early 2006 and continuing through October 27, 2006, state as

follows, in pertinent part:

> **III. AGREEMENT TO TERMS/CONVENTIONS, ETC.**  You understand and agree that
> Brink's has undertaken to provide the Service you have designated based upon the foregoing
> representations, warranties and undertakings made by You.
>
> ....
>
> Should the Shipment pass among or through the United States of America, You agree that none of
> the obligations of the Carmack Amendment (a U.S. law relating to motor carriers transporting
> freight between States of the United States...) apply to any obligation of Brink's under this
> Contract and that this Contract governs the rights and responsibilities of You and of Brink's....
>
> Brink's liability to You for loss or delay or of damage to your Property is agreed to be only as set
> forth in this Contract and you agree to look only to the provisions of this Contract for any claim
> against Brink's relating to Your Shipment.

28.     The liability, if any, of the BRINKS Defendants is barred or limited by one or

more of the above terms and conditions of contract.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

29.     The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S,

INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain

certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period

beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as

follows, in pertinent part:

> **IV. RESPONSIBILITY FOR PACKAGING, COMPLIANCE WITH LAWS, CUSTOMS**
> You are responsible for packaging the Property properly and in accordance with the custom of the
> trade in a manner that the Property is not susceptible to damage during transit by land, sea or
> air...You are also responsible for assuring that each container that comprises a Shipment is
> distinctively and securely marked, addressed or otherwise identified to show its Consignee or

7

Destination or to provide a reference to such information…Brink's assumes no liability to You or any other person for any loss or expense due to Your failure to comply with this provision.

30.     The liability, if any, of the BRINKS Defendants is barred or limited by one or more of the above terms and conditions of contract.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

31.     The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as follows, in pertinent part:

> **VII: BRINK'S NOT AN INSURER.** BRINK'S IS NOT AN INSURER OF YOUR SHIPMENT. If it is necessary to make a claim under this Contract, Your Claim will be made directly to Brink's and will be subject to the procedures and limitations contained in this Contract…

32.     The liability, if any, of the BRINKS Defendants is barred or limited by one or more of the above terms and conditions of contract.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

33.     The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as follows, in pertinent part:

> **IX: BRINK'S RESPONSIBILITY FOR LOSS.** BRINK'S responsibility is dependent upon the Service You designate for each Shipment. By Your Signature on this Contract, You agree that the period during which Brink's is responsible for the Service you have chosen is as follows:
>
> **A.   Door-to-Door (DD):** Brink's responsibility begins when Brink's or its authorized agent or independent contractor physically takes possession of the Shipment, signs the Contract, and gives You a copy. Brink's responsibility ends when Brink's or its authorized agent or independent contractor delivers the Shipment to the Consignee or the

Consignee's representative at Destination.

34.     Upon information and belief, the BRINKS Defendants' and Plaintiff's contractual

relationship was *de facto* "Door-to-Door," *supra*; thus the BRINKS Defendants' responsibility to

Plaintiff ended when all of the BRINKS bags said to contains a certain currency were

successfully delivered without incident to Defendant consignee BANK OF AMERICA at its

Elizabeth, New Jersey facility and the BRINKS Defendants cannot be held liable to Plaintiff for

its allegedly missing deposits.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

35.     The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S,

INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain

certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period

beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as

follows, in pertinent part:

> **IX: BRINK'S LIABILITY; DECLARED VALUE LIMITS; LIMITATIONS ON BRINK'S LIABILITY.**   In the event that the Property comprising the Shipment, or any part, is lost or damaged during the period in which Brink's is responsible, Brink's will pay you the actual monetary value of the Property which is lost or damaged (to the extent of such damage) on the date of loss, up to the value declared for carriage subject to the terms and conditions contained in this Contract and the responsibility accepted by Brink's for the specific Service (s) you have designated in the Contract and Shipment.....

> .....Brink's liability is based upon the value You declare for carriage.  Under no circumstances will Brink's be liable for an amount exceeding the value of the Shipment declared by You for carriage or the actual monetary value of the Property as of the date of loss, whichever is the lesser amount.  If you declare an amount less than the full actual value of the Shipment for carriage, You understand that Brink's is only responsible for loss up to, but not more than, the declared value for carriage, in the same proportion that that declared value bears to the actual value of the Shipment. If you fail to declare a value for any Shipment, the value of that Shipment for the purposes of establishing the liability of Brink's for that Shipment only, shall be the lessor of (a) the total of all charges payable by Brink's under this Contract and (b) U.S. $500.

> ....

> **In all circumstances,  Brink's Liability is subject to the following limitations, to which You agree:**

....

2.    Brink's Liability shall not, under any circumstances, include consequential losses or damages, whether or not caused by the fault or negligence of Brink's and whether or not caused by the fault or neglect of Brink's and whether or not Brink's had knowledge that such losses or damages might be incurred.

3.    Brink's Liability will include responsibility for losses relating to a mysterious disappearance from...any container only if:

- the container has been sealed and packaged as required by this Contract; and

- the container shows visible signs of tampering or damage; and

- the delivery document for the Shipment contains a notation by the receiving party and acknowledged by Brink's of such tampering or damage.

4.    Brink's shall not be liable for non-performance or delays caused by...authority of law, acts of God or means beyond Brink's control.

....

**You understand and agree that Brink's will not be liable for loss of or damage to Your Property directly or indirectly caused or occasioned by, happening through, resulting from or in consequence of any of the following:**

....

- NEGLIGENT PACKING of the Property by You or Your servants, agents or independent contractors.

- INCORRECT OR INSUFFICIENT DESCRIPTION OR VALUATION of Your Property by You whereby Brink's insurance or cover is reduced or extinguished.

36.    The liability, if any, of the BRINKS Defendants is barred or limited by one or more of the above terms and conditions of contract.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

37.    The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as follows, in pertinent part:

10

> **XI: MAKING A CLAIM, DISPUTE RESOLUTION.** You must notify Brink's in writing providing details of any claim within twenty-four hours (24) hours after discovery of any loss of or damage to Your Property, but in no event more than four (4) days following the anticipated date of delivery of Your Property by Brink's per your instructions or seven (7) days following the delivery of Your Property to Brink's, whichever comes sooner. You hereby waive your claim unless you give notice to Brink's within the time limits stated in this paragraph....

38.     Upon information and belief, Plaintiff made no claim to the BRINKS Defendants for any allegedly missing deposits. Thus, Plaintiff's action against the BRINKS Defendants must be dismissed.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

39.     The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as follows, in pertinent part:

> **XI: MAKING A CLAIM, DISPUTE RESOLUTION.** ....You agree that you will formally commence arbitration or other legal action relating to a claim under this Contract no later than one (1) year following the date upon which Brink's received Your Property into its possession.

40.     Upon information and belief, Plaintiff has commenced this action against the BRINKS Defendants more than one (1) year following the date upon which BRINK'S, INCORPORATED received some of Plaintiff's property. Thus, so much of Plaintiff's action against the BRINKS Defendants must be dismissed.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

41.     The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period

beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as follows, in pertinent part:

> **XI: MAKING A CLAIM, DISPUTE RESOLUTION.**
>
> ....
>
> .... Claims relating Shipments solely within the United States shall be governed by Connecticut law, other than the law relating to conflicts and You agree that any such claim shall be adjudicated in the United States District Court for the District of Connecticut.

42.    Plaintiff has breached its contract with the BRINKS Defendants by bringing its FAC against the BRINKS Defendants in the Southern District of New York rather than the United States District Court for the District of Connecticut.  Thus, Plaintiff's action against the BRINKS Defendants must be dismissed.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

43.    The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as follows, in pertinent part:

> **XI: MAKING A CLAIM, DISPUTE RESOLUTION.**
>
> ....
>
> .... Claims relating Shipments solely within the United States shall be governed by Connecticut law, other than the law relating to conflicts....

44.    Based on the above term and condition of contract, the choice of law chosen by Plaintiff and the BRINKS Defendants to apply to Plaintiff's FAC is Connecticut law.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

45.    The "Terms and Conditions of Contract" on the BRINKS Airbills that BRINK'S, INCORPORATED signed and handed to Plaintiff at the time BRINKS bags said to contain certain values were picked-up at Plaintiff's Elizabeth, New Jersey facility during the period beginning in or about late 2005 to early 2006 and continuing through October 27, 2006 state as follows, in pertinent part:

> **XI: MAKING A CLAIM, DISPUTE RESOLUTION.**
>
> ....
>
> .... Claims relating Shipments solely within the United States shall be governed by Connecticut law, other than the law relating to conflicts and You agree that any such claim shall be adjudicated in the United States District Court for the District of Connecticut.

46.    Pursuant to the above term and condition of contract, Plaintiff's FAC is improperly venued in this District and the proper venue is the United States District Court for the District of Connecticut.  Accordingly, Plaintiff's action must be re-filed in or transferred to the United States District Court for the District of Connecticut.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

47.    By signing the Transfer Delivery Sheet(s), Co-Defendant consignee BANK OF AMERICA affirmed that it had received the same amount of cash in the BRINKS bag(s) as the indicated value by Plaintiff consignor on the BRINKS Airbills.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

48.    By signing the Transfer Delivery Sheets, Co-Defendant consignee BANK OF AMERICA affirmed as Plaintiff's agent and/or on behalf of Plaintiff that it had received the same amount of cash in the BRINKS bag(s) as the indicated value by Plaintiff on the BRINKS Airbills.

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

49.    The BRINKS Defendants are not liable because Plaintiff's deposit bags were placed in tamper proof BRINKS bags.

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

50.    The BRINKS Defendants are not liable because a representative of BANK OF AMERICA signed for the BRINKS bags delivered by BRINK'S, INCORPORATED, thereby acknowledging that the bags had not been tampered with.

## AS AND FOR AN EIGHTEENTH AFFIRMATIVE DEFENSE

51.    Plaintiff failed to mitigate and/or take all reasonable steps to minimize its alleged damages.

## AS AND FOR A NINTEENTH AFFIRMATIVE DEFENSE

52.    The BRINKS Defendants delivered all of the BRINKS bags and their contents to BANK OF AMERICA intact as received from Plaintiff.

## AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

53.    Any damages sustained by the Plaintiff were caused by the culpable conduct of the Plaintiff, including contributory negligence, assumption of risks, breach of contract and not by the culpable conduct or negligence of the answering BRINKS Defendants. But if a verdict of judgment is awarded to the Plaintiff, then and in that event the damages shall be reduced in the proportion which the culpable conduct attributable to the Plaintiff bears to the culpable conduct which caused the damages.

## AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE

54.    Whatever injuries and/or damages sustained by the Plaintiff at the time and place alleged in the FAC, were due to the acts of parties over whom the BRINKS Defendants were not

obligated to exercise any control or supervision.

## AS AND FOR A TWENTY-SECOND AFFIRMATIVE DEFENSE

55.    If the Plaintiff sustained any damages as alleged in the FAC, said damages were caused solely by its own negligence, acts and/or omission or those of its agents, servants, or employees or third persons over which the BRINKS Defendants had no control and were not caused or contributed to in any manner by the alleged negligence, breach of express contracts or breach of warranty of the BRINKS Defendants.

## AS AND FOR A TWENTY-THIRD AFFIRMATIVE DEFENSE

56.    That if Plaintiff sustained a loss of missing deposits and/or cash, which is denied, said loss was caused in whole or in part by the contributory negligence of others, including Plaintiff and/or its agents and Defendant BANK OF AMERICA and/or its agents, and any liability of the BRINKS Defendants (which is denied) must be reduced in whole or in part by the negligence of the Plaintiff, Defendant BANK OF AMERICA and other non-parties.

## AS AND FOR A TWENTY-FOURTH AFFIRMATIVE DEFENSE

57.    That if Plaintiff sustained a loss of missing deposits and/or cash, which is denied, said loss was proximately caused by improper security procedures, insufficiency of packaging, inadequacy of marks, incorrect or erroneous accounting or calculations and/or faulty reconciliation of deposits, withdrawals and balances, for which the BRINKS Defendants are not liable under the terms and conditions of contract and any applicable statute.

## AS AND FOR A TWENTY-FIFTH AFFIRMATIVE DEFENSE

58.    Plaintiff placed less cash and/or miscounted the cash it placed into the BRINKS bags, thus causing the apparent shortfall and negating any alleged missing deposits.

## AS AND FOR A TWENTY-SIXTH AFFIRMATIVE DEFENSE

59.    The Plaintiff's property was shipped pursuant to the terms and conditions of a Bill of Lading and there is no further obligation or responsibility other than that provided for within the terms and conditions of said Bill of Lading.

## AS AND FOR A TWENTY-SEVENTH AFFIRMATIVE DEFENSE

60.    The BRINKS Defendants claim the benefit of all applicable defenses, limitations or other terms referenced in their or Plaintiff's or Defendant BANK OF AMERICA'S bills of lading, including all applicable contracts, tariffs, circulars, statutes, conventions and/or federal law.

## AS AND FOR A TWENTY-EIGHTH AFFIRMATIVE DEFENSE

61.    Arrangements for shipment, to which Plaintiff agreed and became bound, had certain risks, dangers and hazards, all of which were open, obvious and well known to Plaintiff at the time it entered into said agreement or accepted same, and that if the Plaintiff sustained any loss as alleged in the FAC, said loss arose out of and was caused by said risks, dangers and hazards, all of which were open, obvious and assumed by Plaintiff at the time it entered into, or became bound by the "Terms and Conditions of Contract."

## AS AND FOR A TWENTY-NINTH AFFIRMATIVE DEFENSE

62.    Plaintiff's FAC is barred by any applicable statute of limitations.

## AS AND FOR A THIRTIETH AFFIRMATIVE DEFENSE

63.    Plaintiff's FAC is barred by one or more of the equitable doctrines of laches, estoppel, waiver, accord and satisfaction and unclean hands.

## AS AND FOR THE BRINKS DEFENDANTS' CROSS-CLAIM FOR CONTRIBUTION AGAINST DEFENDANT/BANK OF AMERICA

64.    That if Plaintiff was caused to sustain damages by reason of the claims set forth in the FAC, all of which are specifically denied, such damages were sustained by reason of the acts, conduct, misfeasance or nonfeasance, of Defendant BANK OF AMERICA, its agents, servants and/or employees, and not by the BRINKS Defendants, and if any judgment is recovered by Plaintiff against the BRINKS Defendants, said Defendants will be damaged thereby, and Defendant BANK OF AMERICA is or will be responsible therefore in whole or in part.

## AS AND FOR THE BRINKS DEFENDANTS' CROSS-CLAIM FOR INDEMNIFICATION FROM DEFENDANT BANK OF AMERICA

65.    That if Plaintiff was caused to sustain damages by reason of the claims set forth in the FAC, all of which are specifically denied, and if any judgment is recovered by the Plaintiff against the BRINKS Defendants, that under a contract entered into between the parties or by reason of express or implied warranty, Defendant BANK OF AMERICA will be liable over to the BRINKS Defendants pursuant to the terms of the indemnity agreement in said contract or warranty, for the full amount of any verdict or judgment awarded to the Plaintiff against this answering defendant, together with attorneys' fees, costs, and disbursements.

## AS AND FOR THE BRINKS DEFENDANTS' FIRST COUNTERCLAIM AGAINST PLAINTIFF

66.    The BRINKS Defendants repeat and reiterate each and every response and allegation contained in Paragraphs "1" through "65," *supra*, as though set forth herein.

67.    Plaintiff investigated its alleged loss and/or missing deposits and advised the BRINKS Defendants of its investigation.

68.    Plaintiff disclosed and/or communicated a memorandum regarding its investigation to the BRINKS Defendants.  Said memorandum is attached hereto as **Exhibit "B."**

17

69.    Plaintiff's memorandum does not indicate that BRINKS is responsible and/or liable for Plaintiff's alleged loss and/or missing deposits. **Id.**

70.    Upon information and belief, during Plaintiff's investigation it did not advise the BRINKS Defendants that they were blamed or held responsible for Plaintiff's alleged loss and/or missing deposits.

71.    Subsequent to Plaintiff's investigation when it sued whom it believed to be the party responsible and/or liable for its alleged loss and/or missing deposits, it only sued Defendant BANK OF AMERICA. **(See Exhibit "A," *supra*).**

72.    Said action and complaint alleged, *inter alia*, that Plaintiff's investigation "determined that approximately $208,000.00 of plaintiff's deposits had been stolen or otherwise misappropriated by a Bank of America employee(s)..." **(id., at para. 13)**, that Plaintiff's deposit bags had been "placed in tamper proof Brinks bags," **(id., at para. 10.)** and that when then the bags were delivered to BANK OF AMERICA, "a bank representative signed for the bags, acknowledging that the bags had not been tampered with." **(Id., at para. 11).**

73.    Subsequently, Plaintiff was advised, importuned, and/or led into filing its FAC that named BRINKS GLOBAL SERVICES, USA, INC. and BRINKS, INCORPORATED as defendants, despite the fact its prior action and complaint, *supra*, had assigned no fault to and had in essence absolved the BRINKS Defendants and it appears to have had no documentary evidence or proof that the BRINKS Defendants are liable for its alleged loss and/or missing deposits.

74.    Plaintiff's hasty and/or ill-considered decision to file suit against the BRINKS Defendants has resulted and/or will result in BRINKS incurring of investigative and attorneys fees and costs in the amount of at least $50,000.00.

75.     Therefore, the BRINKS Defendants seek a Declaratory Judgment pursuant to 28 U.S.C. 2201 that in the event of an order and decision, judgment and/or verdict declaring that they are not liable and/or responsible for Plaintiff's alleged loss and/or missing deposits, that the Court award the BRINKS Defendants and direct Plaintiff to pay the BRINKS Defendants fees and costs in the amount of at least $50,000.00.

## AS AND FOR THE BRINKS DEFENDANTS' SECOND COUNTERCLAIM AGAINST PLAINTIFF

76.     The BRINKS Defendants repeat and reiterate each and every response and allegation contained in Paragraphs "1" through "75," *supra*, as though set forth herein.

77.     A party is bound by formal and informal judicial admissions in its pleadings and is estopped from denying or altering the existence of such admissions.

78.     Plaintiff has judicially admitted that its investigation "determined that approximately $208,000.00 of plaintiff's deposits had been stolen or otherwise misappropriated by a Bank of America employee(s)…" **(Exhibit "A," *supra*, at para. 13**), that its deposit bags had been "placed in tamper proof Brinks bags," **(id., at para. 10.)** and that when then the bags were delivered to BANK OF AMERICA, "a bank representative signed for the bags, acknowledging that the bags had not been tampered with." **(Id., at para. 11).**

79.     Therefore, the Court must take judicial notice of Plaintiff's past judicial admissions and rule as a matter of law that Plaintiff is bound by said admissions and is estopped from denying or altering their existence.

## JURY DEMAND

80.     The BRINKS Defendants demand a trial by jury on all of the issues.

WHEREFORE, the BRINKS Defendants demand judgment:

1.    Dismissing Plaintiff's FAC against the BRINKS Defendants;

2.    On their first counterclaim, an order awarding the BRINKS Defendants and directing Plaintiff to pay fees and costs in the amount of at least $50,000.00 in the event of an order and decision, judgment and/or verdict declaring that they are not liable and/or responsible for Plaintiff's alleged loss and/or missing deposits;

3.    On their second counterclaim, an order taking judicial notice of Plaintiff's past judicial admissions and ruling as a matter of law that Plaintiff is bound by said admissions and is estopped from denying or altering their existence; and

4.    Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       September 12, 2007

Yours, etc.,

WHITE FLEISCHNER & FINO, LLP

By:

Jonathan S. Chernow, Esq. (JSC-7339)
Attorneys for Defendants
BRINK'S GLOBAL SERVICES
U.S.A, INC., s/h/i  as BRINK'S GLOBAL
SERVICES USA, INC. and BRINK'S,
INCORPORATED, s/h/i as BRINKS, INC.
140 Broadway - 36th Floor
New York, New York 10005
(212) 487-9700
Our File No.: 404-12961-D-JSC

TO:    (See Attached Affidavit)

Exhibit A



Christopher M. Schierloh (CS6644)
**CASEY & BARNETT, LLC**
317 Madison Avenue, 21st Floor
New York, New York 10017
(212) 286-0225
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RETAIL TRAVEL SERVICES, INC.,

          Plaintiff,

   -  against –

BANK OF AMERICA N.A.,

          Defendant.
-----------------------------------------------------------X

**2007 Civ.**


**COMPLAINT**

    Plaintiff, RETAIL TRAVEL SERVICES, INC., through its attorneys, CASEY &

BARNETT, LLC, for its Complaint, alleges upon information and belief, as follows:

**PARTIES**

    1.    Plaintiff, RETAIL TRAVEL SERVICES, INC., (hereinafter "RTS") at all times

relevant was and is a corporation with a place of business located at 1166 Kane Concourse, Suite

301, Bay Harbor Islands, Florida 33154.

    2.    Defendant, BANK OF AMERICA N.A., was and is a corporation with an office

and place of business located at 100 North Tyron Street, Bank of America Corporate Center,

Charlotte, North Carolina 28255.

    3.    Plaintiff sues on its own behalf and, as agent and trustee, on behalf of any other

persons or parties who may now have or hereinafter acquire an interest in this action.

### JURISDICTION AND VENUE

4.    This action is brought pursuant to the Court's diversity jurisdiction, 28 USC § 1332(a)(1) in that plaintiff is a corporation incorporated under the laws of the State of Florida and defendant is a corporation incorporated under the laws of the State of Delaware. The matter in controversy exceeds, exclusive of interests and costs, the sum of $75,000.

5.    Venue is properly placed in this District in that the defendant conducts substantial business in this District, and is subject to personal jurisdiction in this District.

### FACTS

6.    This claim is for a series of thefts of monies belonging to plaintiff, RTS, that were delivered to defendant, Bank of America, for deposit between April 26, 2006 and October 26, 2006, as more fully described below.

7.    At all times relevant, plaintiff, RTS, maintained an account with defendant, Bank of America.

8.    Plaintiff was, and still is, engaged in the business of marketing and selling duty-free merchandise, such as jewelry, liquor, perfume and cosmetics, to passengers on commercial aircraft during international travel.

9.    At all times relevant, monies received by plaintiff from on-board sales of merchandise were processed at plaintiff's cash processing office in Elizabeth, New Jersey. There, in addition to other verification and security measures, money was counted twice and the amounts independently confirmed by a manager before being placed into deposit bags, along with Bank of America deposit slips.

10.     The deposit bags were then placed in tamper proof Brinks bags, sealed within a second tamper-proof Brinks bag, and the amount of the deposit was written on the outer bag.

11.     Thereafter, the sealed bags were picked up by Brinks and transported to Bank of America where a bank representative signed for the bags, acknowledging that the bags had not been tampered with.

12.     In October 2006, plaintiff discovered that a series of deposits delivered to defendant, Bank of America, had not been fully credited to its account.

13.     Plaintiff conducted an investigation into the matter, which included an examination of logs, airway bills and meetings and/or interviews with representatives from Brinks and personnel from the defendant bank; it was determined that approximately $208,000 of plaintiff's deposits had been stolen or otherwise misappropriated by a Bank of America employee(s) during the referenced period of time.

14.     The loss of and damage to plaintiff was not the result of any act or omission of plaintiff but, on the contrary, was due solely as the result of the negligence, fault, neglect, breach of contract and breach of bailment on the part of defendant, Bank of America.

15.     By reason of the foregoing, plaintiff has sustained damages in a total amount of no less than $208,000, as nearly as presently can be determined, no amount of which has been paid, although duly demanded.

WHEREFORE, Plaintiff prays:

1.      That process in due form of law may issue against the Defendants citing they to appear and answer all and singular the matters aforesaid;

2.      That judgment may be entered in favor of Plaintiff against the Defendants for the amount of Plaintiff's damages, together with pre-judgment interest computed at 9% per annum, the costs and the disbursements of this action; and

3.      That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated:   New York, New York
         May 24, 2007
         291-03


                          CASEY & BARNETT, LLC
                          Attorneys for Plaintiff

                          By: _____
                          Christopher M. Schierloh (CS-6644)
                          317 Madison Avenue, 21st Floor
                          New York, New York 10017
                          (212) 286-0225

Exhibit B

June 2006

On June 19th Jamille notified me of a short deposit. Bank of America had called to report that RTS had a deposit that was short $1000. The BOA branch is located in Elizabeth NJ.T
Our cash collection procedure is as follows:
- The duty free merchandise is sold onboard the international aircraft.
- The money is transported back to the cash processing office inside the duty free cart.
- The money is taken out of the cart and then prepared for shipment to the bank.
- The money is then transported from our Elizabeth cash office to the bank via Brinks security.
- The money is delivered to the Bank of America in Elizabeth NJ.
- A bank representative signs for the bag and contents.
- A bank representative is then supposed to count the contents of the deposit and verify it against the amount written on the outside of the bag and the deposit slip.

Caleen sent me an additional email on June 19, 2006. It was in reference to the same short deposit. I then opened an investigation.
- On June 19, 2006 Caleen sent me an email that there was a short CO deposit for $1111.25.
- She said that Jamille notified her on June 18, 2006 of the shortage. She said that someone removed $1100 from the deposits made at the Bank of America.
- She said the money was transported there via Brinks.
- I immediately called her for further details.
- I asked her if the bank had reported an overage. She said no. She said she requested the old money transport sack and was told they threw it out.
- She said she was going to go to the bank and see what info she could get. I asked her if this was the first incident. She said yes.

On June 20, 2006 I sent Caleen an email requesting the bank information so I could follow up with the bank. I contacted the bank and was advised that there was no manager. I asked if they had a fraud department. They gave me the main 800 number for Bank of America. I asked what their procedure was in reference to keeping the brinks sack. They said they sometimes throw them out.

I then followed up with Caleen to determine what she had discovered when she personally visited the bank. She said they told her they did not have a manager, but would have one soon. She said they were young employees. She told me that they had changed staff very recently. She said she was not able to get any further information. *I told her to notify me immediately if the problem re-occurs.*
*Since this was determined to be an isolated incident no further action was taken.*

July 2006
Approximately ten days later, I followed up with Jamille on the status of my initial investigation.
- I told her that I contacted the bank and tried to get the money transport sack.
- I was told they threw it out.
- I was told there had been personnel changes at the bank.
- Due to the fact I was advised of only one incident, I placed it on a non priority list.
- When I initially spoke to Jamille in June, I said "if it has not repeated and was an isolated incident, than there were few follow up options." She said there were no other like occurrences.

RTS Cash Theft     Confidential                    Page 2

September 2006
I then met with Jamille in September. She said she still had the open missing deposit from
Elizabeth NJ. I again reviewed the chain of events reference to the short deposit.
- I said the bank had changed personnel and could not produce the transport bags.
- I said if it had not repeated itself, than there was little I could do.
- Jamille confirmed the shortage had not repeated.

October 2006
Jamille then called me in the beginning of October to discuss the status of the missing cash in
Elizabeth.
- I asked if it had repeated. She said no.
- I said there was not much more that could be done.
- If it was a onetime incident then we had few options.

On October 6, 2006, Jamille called me and advised that Alan B wanted an update of the BOA
Elizabeth NJ short deposit investigation. I met with both of them in our Miami office and advised
the following:
- I said that I looked into the initial complaint.
- I advised him that there had been changes at the bank and they could not produce the
  cash transport bag.
- I again explained that if it did not reappear and was an isolated incident that there was
  little I could do.
- At no point did anyone say it was an ongoing issue.

I was contacted by Sam Attias on October 24th. He advised that the missing deposits were a
reoccurring issue and there were $100,000 unaccounted for since May. Sam advised that this
was found when he was reconciliation the bank account. Due to the fact that this is a re-occurring
issue and has been ongoing. I contacted the FBI and Brinks security immediately. I set up a sting
and started surveillances.

On Monday October 30th I made a site visit our Elizabeth NJ cash office. I matched the list of
missing deposits to the airway bills retained in our files. I then personally the bank. I spoke to the
bank manager. She advised they had thrown out all the Brinks bags. Although she said she
keeps them for 10 days. I requested the bags from three days earlier. She said they did not have
them. I then contacted Ann from Bank of America corporate security. I followed up on the letter of
claim I submitted for the total missing deposits. She said she would interview the bank staff and
conduct an investigation.

I then met with the Brinks director of US security Bruce Woerner. He said "no one has ever lost
dime shipping money with Brinks" He said if it is his employees involved they would pay us back.
I provided him the airway bills and brinks driver logs. We then packed a deposit bag to send to
the bank.
I then received a call from Ann at Bank of America corporate security. She said she interviewed
the branch manager. She said that they did not keep the bags. She said they only notified us of
one $1000 short deposit in May. That was the only discrepancy they had recorded. She said it
was not their policy to verify the deposits. She said they sign for the money but do not verify the
amount in the deposit bag. I told her the amount was written on the outside of the bag and on the
airway bill. She said that it is not the banks responsibility to make sure all the money is there. I
asked if they sign for the total amount. She said yes. I then said but you don't verify that what you
sign for. She said no they don't verify it. Then she said that we only had 60 days to file a claim. I
said the bank had 48 hours to notify us of a discrepancy. Therefore we could not file a claim on a
shortage we had no knowledge of.

The investigation is still ongoing.

I conducted a follow up interview with Caleen. I asked her about the deposit slips. I told her the bank states they were left for pick-up. Caleen stated that she went to the bank previously to pick up the slips. She was told the manager had them. No one at the bank could get them for her. Caleen is not an account holder and can not access the bank account information.

Caleen's email from June 19th attached:

Yesterday I had a call from Jamille stating that one of our deposits was short $1k according to BOA. BOA called Jamille and notified her. We made the deposit for $7,566.25 of which $110 were cheques, $11.25 were coins and $7,445 were in notes. BOA claims that they received the coins and cheques but only $6,445 in notes.

I checked the actual amounts which were counted against the envelopes to verify that we didn't make an error in making out the deposit.

The cameras were checked and there wasn't any suspicious looking activity.

I called the bank and spoke to a young man by the name Johnny who said that the money was counted on Friday afternoon and they called the office in Miami but it was six in the evening so no one was there. He stated that the teller who counted the money called and told him there was a shortage and he counted it.

I asked him for the deposit bag so as to verify that the bag number which we sent to the bank is the same as the number we have on our file. Of course they do not have the bag even though Johnny told me that they do not throw the garbage out and he would check.

This morning we called again to check and see if anything had changed but the young man says that they didn't find the bag and when we told him that we had checked our cameras he said that we couldn't tell how much money someone would have taken out from the bag but we said we would have seen someone taking the money. He, Johnny said that there are so many hands touching the money that anyone could have taken it.

We asked for the manager and he says that the new manager will not be in until Monday coming; so I guess he is acting as the manager.

Caleen

STATE OF NEW YORK    )
                     )ss:
COUNTY OF NEW YORK   )

N. Yvonne Miranda, being duly sworn, deposes and says:

That I am not a party to the within action, am over 18 years of age and reside in New York, New York.

That on September 12, 2007 deponent served the within **ANSWER, CROSS CLAIMS AND COUNTERCLAIMS** upon the attorneys and parties listed below by overnight mail.


TO:

Christopher M. Schierloh, Esq.
CASEY & BARNETT, LLC
Attorney for Plaintiff
317 Madison Avenue, 21st Floor
New York, New York 10017
(212) 286-0225

Costantine A. Despotakis, Esq.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
Attorneys for Defendant BANK OF AMERICA N.A.
3 Gannett Drive
White Plains, New York 10604

_____
N. Yvonne Miranda

Sworn to before me this
12th day of September, 2007

_____
Notary Public

WENDY A. JANTZ
Notary Public, State of New York
No. 01JA5038412
Qualified in Richmond County
Commission Expires January 23, 20 11

Docket No.: 07 CV 4617 (CM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RETAIL TRAVEL SERVICES, INC.,

                    Plaintiff,

      -against-

BANK OF AMERICA, N.A., BRINKS
GLOBAL SERVICES USA, INC. and
BRINKS, INC.,

                Defendants.

## ANSWER, CROSS CLAIMS AND COUNTERCLAIMS

**WHITE FLEISCHNER & FINO, LLP**
*Attorneys for Defendants Brinks*
*Global Services USA, Inc. and Brinks, Inc.*
**140 BROADWAY**
**NEW YORK, N.Y. 10005**
**(212) 487-9700**

To:

*Attorney(s) for*

*Service of a copy of the within*      *is hereby admitted.*

*Dated:*

                        .........................
                        *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐   *that the within is a (certified) true copy of a*
     *entered in the office of the clerk of the within named Court on*

**NOTICE OF
ENTRY**

☐   *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
     *one of the judges of the within named Court, at , on , at .*

**NOTICE OF
SETTLEMENT**

*Dated:*

**WHITE FLEISCHNER & FINO, LLP**
*Attorneys for Defendants Brinks*
*Global Services USA, Inc.*
*and Brinks, Inc.*